UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

SHELTON MCELROY,                                                              Plaintiff,

v.                                                           Civil Action No. 3:15-cv-390-DJH

CORDISH COMPANIES, INC., et al.,                                          Defendants.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

In this purported class action, Plaintiff Shelton McElroy alleges that the defendants engaged in systematic discrimination against African-Americans at the Fourth Street Live entertainment venue in Louisville, Kentucky.  The case was removed from Jefferson Circuit Court pursuant to the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d).  McElroy seeks remand, arguing that the defendants failed to establish the requisite amount in controversy and that even if removal was proper, the Court should decline to exercise jurisdiction under CAFA. (Docket No. 15)  Meanwhile, several of the defendants have filed motions to dismiss for failure to state a claim or lack of jurisdiction—motions to which McElroy has filed no response.  (D.N. 9, 13, 16)  For the reasons explained below, the Court will deny the motion to remand and allow McElroy a final opportunity to respond to the motions to dismiss.

## I.      BACKGROUND

The following facts are set out in the complaint.  On October 26, 2014, McElroy went to Fourth Street Live "dressed neatly in a polo shirt, new cargo khakis, and suede boots."  (D.N. 1-2, PageID # 17)  At the entry of Sully's Restaurant and Saloon, the Sully's manager approved McElroy's attire, but McElroy "observed the manager make a head movement in [McElroy's] direction . . . while looking at the bouncer," which looked to McElroy like a signal to the

1

bouncer.  (*Id.*, PageID # 18)  McElroy was admitted to Sully's upon payment of the $10 cover charge.

Shortly after McElroy entered, the music changed from hip-hop to country.   As he reached the dance floor, McElroy was intercepted by the bouncer, who told him to return to the entry.   When they reached the front door, McElroy asked what was happening, and the bouncer replied that McElroy needed to leave "because he was not in compliance with the dress code." (*Id.*, PageID # 19)  McElroy pointed out that the DJ and two white males dancing on the bar were shirtless.  He began recording video on his phone.

The bouncer then told McElroy "he had to leave because his pants 'were sagging.'"  (*Id.*) McElroy "lifted his shirt to show that his pants were neatly fitted around his waist, and that no part of them was sagging."  (*Id.*)   However, "the bouncer's demeanor remained forceful and menacing throughout the exchange," and McElroy agreed to leave.  (*Id.*)  When he asked for a refund of the $10 cover charge, the bouncer refused, and the manager, who had approached from behind McElroy, signaled to a Louisville Metro Police Department (LMPD) officer for assistance.   The officer grabbed McElroy's arm and told McElroy to come with him or he would be arrested.  (*Id.*, PageID # 20)  Another LMPD officer approached.  Fearful, McElroy lay on the ground and placed his hands behind his head.   One of the officers took McElroy's phone and turned off the video recorder.  When McElroy protested, the officer put the phone in McElroy's pocket and told him he was "about to be charged with resisting arrest."  (*Id.*)

The LMPD officers took McElroy to the alley behind Sully's, where he was patted down against a squad car.  A man in a Fourth Street Live polo shirt approached and took notes on a clipboard.  When the man asked the officers what McElroy was "going down for," McElroy

2

heard one of the officers say, "He laid down on the ground, so he wanted to get arrested anyway." (*Id.*)

McElroy was taken to jail and charged with second degree criminal trespassing and disorderly conduct. (*Id.*, PageID # 21) He was given no bail option, and he spent the night in jail, preventing him from picking up his daughter the following morning as scheduled. He was arraigned and released in late morning. McElroy reported the arrest to his employer, as required, and was immediately terminated from his position as a substance-abuse counselor. His name and mug shot appeared in the November 10, 2014 issue of "Crime Times," accompanied by the words "Assault-4th Degree," "Domestic Violence", "Kidnapping-Adult," "Possession Controlled Substance-Cocaine," "Trafficking Controlled Substance-Cocaine," "Possession Marijuana," and "Persistent Felony Offender II." (*Id.*, PageID # 21-22) McElroy retained an attorney to defend him, and the charges against him were ultimately dismissed for lack of evidence.

McElroy filed this action in Jefferson Circuit Court on April 24, 2015. In a thirty-three page complaint, he alleges discrimination in violation of the Kentucky Civil Rights Act; assault; battery; false imprisonment; premises liability; negligent failure to hire, train, or supervise; intentional or negligent infliction of emotional distress; false arrest/malicious prosecution; conspiracy; and various other state statutory and constitutional violations. (D.N. 1) McElroy asserts that as a result of the defendants' conduct, he "has suffered and continues to suffer damages including, but not limited to, embarrassment, humiliation, indignity, suffering, multiple fears, emotional distress and trauma, anxiety, harm to reputation, discouragement, damage to self-esteem, helplessness, hopelessness, shamefulness, shame upon his family and daughter, loss of job, loss of earnings, expenditure of legal fees, costs, expenses, and more." (*E.g.*, *id.*, PageID # 36) He seeks compensatory and punitive damages. (*Id.*, PageID # 44)

With respect to the claims of discrimination, McElroy seeks to represent a class, alleging that hundreds of individuals have suffered similar treatment.[1]  (*Id.*, PageID # 22; *see id.*, PageID # 23 (alleging that McElroy's discrimination claim is typical of the class); *id.*, PageID # 24 (seeking class relief for Counts 1 and 2 of the complaint))  The proposed class is defined as

> [a]ll individuals of African American descent who currently live in and/or around the Louisville metro area, who have not been allowed to enter, or who have been ejected from, the area known as 4th Street Live in Louisville, Kentucky, including each of the bars, restaurants and venues located within same, since the date of April 24, 2011, on the ground that their attire did not meet dress code when, in fact, their attire met dress code.

(*Id.*, PageID # 22)  In his motion to remand, McElroy argues that his claims belong in state court pursuant to the Class Action Fairness Act.  (D.N. 15)

## II.    ANALYSIS

Because the motion to remand raises questions of subject matter jurisdiction, the Court's analysis begins there.

### A.    Motion to Remand

Pursuant to the Class Action Fairness Act of 2005, federal courts have jurisdiction "over certain class actions, defined in [28 U.S.C.] § 1332(d)(1), if the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million." *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 552 (2014) (citing § 1332(d)(2), (5)(B); *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345 (2013)).   The Act contains exceptions—the "local controversy" exception and the "home state" exception—requiring courts to decline jurisdiction under certain circumstances.  *See* 28 U.S.C. § 1332(d)(4)(A)-(B).

---

[1] McElroy states that "[t]he precise number of Class members is unknown" but is believed to be "in excess of several hundred."  (D.N. 1-2, PageID # 22)

According to McElroy, remand is warranted here for three reasons. He first contends that removal was improper because the defendants have failed to prove the requisite amount in controversy.[2] (D.N. 15, PageID # 136-37)   In the alternative, he asserts that the Court must decline jurisdiction over this case based on either the local-controversy exception or the home-state exception to CAFA. (*Id.*, PageID # 137-41)  None of McElroy's arguments is persuasive.

### 1.    Amount in Controversy

To remove a case to federal court, a defendant must file a notice of removal "containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a).  As the Supreme Court has observed, the "short and plain statement" requirement intentionally "tracks the general pleading requirement stated in Rule 8(a) of the Federal Rules of Civil Procedure." *Dart Cherokee Basin Operating Co.*, 135 S. Ct. at 553 (citation omitted).  Thus, a notice of removal is sufficient if it contains "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 554.  A defendant need not provide evidence supporting that allegation unless "the plaintiff contests, or the court questions" it. *Id.*  If the allegation is challenged, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.*

In their notice of removal, the defendants observed that McElroy's complaint contains twenty-two separate counts asserting eight causes of action and seeks compensatory, liquidated, and punitive damages, as well as attorney fees, lost wages, "lost good will and reputation value," "damages for embarrassment, humiliation and mental anguish," and "any and all other relief the Court deems appropriate." (D.N. 1, PageID # 7 (quoting Complaint ¶¶ 81, 199))  Based on

---

[2] McElroy concedes that the minimal-diversity requirement is met (D.N. 15, PageID # 137), and his complaint alleges that he believes the number of class members to be "in excess of several hundred." (D.N. 1-2, PageID # 22 ¶ 76)  Thus, amount in controversy is the only CAFA removal requirement at issue here. *See Dart Cherokee Basin Operating Co.*, 135 S. Ct. at 552.

McElroy's demand and his allegation that "the putative class exceeds 'several hundred' individuals," and assuming a punitive-to-compensatory damages ratio of 4:1, the defendants conclude that each class member's damages claim "would need to be only $2500-$3300—i.e.[,] $1,000,000 in the aggregate—in order for the amount in controversy to exceed five million dollars." (*Id.*, PageID # 8)

McElroy offers no evidence suggesting that the defendants' estimate is inaccurate, nor does he even argue that the amount in controversy is less than $5 million.  Instead, he merely asserts that the notice of removal is "speculative" with regard to the amount in controversy and that the defendants thus have not met the preponderance standard.  (*See* D.N. 15, PageID # 136; *see also id.*, PageID # 137 (asserting that the case should be remanded "[b]ecause Defendants' Notice of Removal contains defects"))  As explained above, however, the defendants were not required to submit evidence with their notice of removal.  *See Dart Cherokee Basin Operating Co.*, 135 S. Ct. at 554.  Rather, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  *Id.*

The Court finds that the notice's allegation regarding the amount in controversy is plausible.  The allegation is based on facts set forth in McElroy's complaint and Supreme Court precedent concerning an acceptable punitive-to-compensatory damages ratio, combined with a conservative estimate of class members' claims.  *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003) (noting cases in which 4:1 punitive-to-compensatory ratio was upheld and explaining that "[s]ingle-digit multipliers are more likely to comport with due process" than extreme ratios).  McElroy has neither shown that the notice of removal is defective

nor presented proof that the jurisdictional threshold is not met.  Therefore, remand is not warranted on this ground.[3]

## 2.    Local-Controversy Exception

The local-controversy exception to CAFA, set out in § 1332(d)(4), provides that

[a] district court shall decline to exercise jurisdiction . . .
 (A)(i) over a class action in which--
   (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
   (II) at least 1 defendant is a defendant--
    (aa) from whom significant relief is sought by members of the plaintiff class;
    (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
    (cc) who is a citizen of the State in which the action was originally filed; and
   (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and
  (ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons[.]

The burden is on the party seeking remand to show, by a preponderance of the evidence, that an exception to CAFA applies.  *Brown v. Paducah & Louisville Ry., Inc.*, No. 3:12-CV-818-CRS, 2013 U.S. Dist. LEXIS 132608, *5 (W.D. Ky. Sept. 17, 2013).  McElroy fails to make this showing.

First, McElroy asserts that because he is the only plaintiff named in the complaint and he is a citizen of Kentucky, "100% of the plaintiffs are citizens of Kentucky," and thus "this

---

[3] Even if this were a close call, the tie would not go to McElroy, as he contends.  (*See* D.N. 15, PageID # 136)  The rule that any doubts as to the propriety of removal must be resolved in favor of remand is inapplicable in the class action context; the Supreme Court has stated unequivocally that "no antiremoval presumption attends cases invoking CAFA."  *Dart Cherokee Basin Operating Co.*, 135 S. Ct. at 554.

plaintiff class far exceeds the two-thirds requirement" set out in the local-controversy exception. (D.N. 15, PageID # 138)  His calculation is incorrect.  To determine whether "greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of" Kentucky, § 1332(d)(4)(A)(i)(I), the Court must consider "the citizenship of putative class members who are not presently involved in the case."  *Brown*, 2013 U.S. Dist. LEXIS 132608, at *16 n.8 (citing cases from the Seventh Circuit, the Southern District of Indiana, and the Eastern District of Kentucky following this approach); *see also* § 1332(d)(8) (CAFA requirements apply before and after class certification).  As McElroy has provided no information regarding the citizenship of other putative class members, the Court cannot find that "greater than two-thirds of" them are Kentucky citizens.[4]  § 1332(d)(4)(A)(i)(I).

Similarly, McElroy cites only his own claims against Defendant Louisville Irish, LLC in support of the "significant relief" and "significant basis" factors.  He observes that "[t]en of [his] twenty-two counts expressly name Louisville Irish . . . with allegations under a theory of vicarious liability including assault, battery, false imprisonment, racial discrimination, and negligent hiring, training, or supervision of employees."  (D.N. 15, PageID # 139 (citing complaint))  Yet only two of those ten counts contain claims made on behalf of a class.  (*See id.*; D.N. 1-2, PageID # 22-26)  The statute requires that at least one Kentucky defendant be "a defendant . . . from whom significant relief is sought by *members of the plaintiff class* . . . [and] whose alleged conduct forms a significant basis for the claims asserted by *the proposed plaintiff class*."  28 U.S.C. § 1332(d)(4)(A)(i)(II)(aa)-(bb) (emphasis added).  McElroy's claims alone cannot satisfy this requirement.

---

[4] As the defendants observe, McElroy's proposed class would include individuals residing "in and/or around the Louisville metro area," which encompasses several counties in southern Indiana.  (D.N. 1-2, PageID # 22; *see* D.N. 17, PageID # 180-81 (citing U.S. Census Bureau bulletin defining Louisville Metro statistical area))

Moreover, McElroy fails to establish that Louisville Irish, LLC is a Kentucky citizen.  He asserts that since Louisville Irish "is both a Kentucky Limited Liability Company and holds its princip[al] place of business in Kentucky," the company should "undoubtedly be considered a citizen of Kentucky in any jurisdictional debate." (D.N. 15, PageID # 139)  However, an LLC's citizenship is not determined by the company's state of organization and principal place of business, but rather by "the citizenship of each of its members."  *Varsity Brands, Inc. v. Star Athletica, LLC*, 799 F.3d 468, 494 (6th Cir. 2015) (quoting *Delay v. Rosenthal Collins Grp., LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009)).  Thus, Louisville Irish's citizenship cannot be determined from the information McElroy has provided.  *See Delay*, 585 F.3d at 1005 ("When diversity jurisdiction is invoked in a case in which a limited liability company is a party, the court needs to know the citizenship of each member of the company.  And because a member of a limited liability company may itself have multiple members—and thus may itself have multiple citizenships—the federal court needs to know the citizenship of each 'sub-member' as well." (citing *Hicklin Eng'g L.C. v. Bartell*, 439 F.3d 346, 347-48 (7th Cir. 2006))).

Finally, although McElroy asserts upon information and belief that no similar class action has been filed within the past three years (D.N. 15, PageID # 140), the defendants have identified a class action filed in 2014 alleging racial discrimination by Defendant Cordish Companies, including discrimination related to dress code.  *See Combs v. Cordish Cos., Inc.*, No. 14-0227-CV-W-ODS, 2014 U.S. Dist. LEXIS 118677, at *4 (W.D. Mo. Aug. 26, 2014).  For all of the above reasons, the local-controversy exception is inapplicable.

### 3.     Home-State Exception

McElroy likewise fails to establish that the home-state exception applies here.  Under the home-state exception, the Court must decline to exercise jurisdiction over a class action if "two-

thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B). As before, McElroy incorrectly asserts that the two-thirds requirement is satisfied by his own Kentucky citizenship. (*See* D.N. 15, PageID # 140) He further asserts that the primary defendants are also Kentucky citizens; however, he mentions only Louisville Irish (whose citizenship he again defines by the wrong standard). (*Id.*, PageID # 141) McElroy does not explain why Louisville Irish should be considered the sole primary defendant when the class allegations are against all named defendants. (*See* D.N. 1-2, PageID # 24-25) Instead, he simply points to his own claims against Louisville Irish. (*See* D.N. 15, PageID # 141 ("Louisville Irish, LLC is a Kentucky Limited Liability Corporation and the actions of its employees form a significant portion of the claims for which Plaintiff seeks relief."))

Although CAFA does not define the term "primary defendant," this Court has concluded that a primary defendant for purposes of CAFA is a defendant "either 1) directly liable to the plaintiff class, rather than merely vicariously or secondarily liable, . . . or 2) liable to a substantial portion of the plaintiff class members." *Brown*, 2013 U.S. Dist. LEXIS 132608, at *22 (citations omitted). To meet the primary-defendant requirement, "*all* of the primary defendants must be citizens of the state in which the action was originally filed." *Id.* at *21 n.13 (citing *Meiman v. Kenton Cty., Ky.*, No. 10-156-DLB, 2011 U.S. Dist. LEXIS 10251 (E.D. Ky. Feb. 2, 2011); *Kendrick v. Standard Fire Ins. Co.*, No. 06-141-DLB, 2007 U.S. Dist. LEXIS 28461 (E.D. Ky. Mar. 31, 2007)). McElroy has made no attempt to show that these requirements are satisfied. Nor, as mentioned above, has he demonstrated that "two-thirds or more of the members of all proposed plaintiff classes in the aggregate" are citizens of Kentucky. § 1332(d)(4)(B). The Court thus cannot find that the home-state exception applies.

**B.      Motions to Dismiss**

McElroy failed to respond to any of the three pending motions to dismiss.  (*See* D.N. 9,

13, 16)  The motions may not be granted on this basis alone, however.  *See Bangura v. Hansen*,

434 F.3d 487, 497-98 (6th Cir. 2006) (citing *Carver v. Bunch*, 946 F.2d 451, 452, 454-55 (6th

Cir. 1991)).  The Court notes that McElroy has obtained new counsel since the motions to

dismiss were filed.  (*See* D.N. 20)  In the interest of fairness and in hopes that his new counsel

will represent him more diligently, the Court will allow McElroy a final opportunity to respond

to the motions.

**III.    CONCLUSION**

McElroy has not met his burden to show that any exception to CAFA applies.  Nor has he

demonstrated that the defendants' notice of removal was defective in its allegation of the amount

in controversy.  Accordingly, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)      McElroy's motion to remand (D.N. 15) is **DENIED**.

(2)      McElroy shall have an additional **twenty-one (21) days** from the date of entry of

this Memorandum Opinion and Order within which to respond to the pending motions to dismiss

(D.N. 9, 13, 16).  The defendants may file any replies within **fourteen (14) days** thereafter.  **In

the event McElroy intends to abandon his claims, he shall file a response to that effect.**

(3)      The motions to dismiss of Defendants Cordish Companies, Inc., et al. (D.N. 9);

Louisville Jefferson County Metro Government (D.N. 13); and Louisville Irish, LLC (D.N. 16)

are **ADMINISTRATIVELY REMANDED** pending completion of the briefing schedule set

forth in paragraph (2) above.

March 16, 2016

**David J. Hale, Judge**
**United States District Court**

11